UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN FRANK,<br><br>    Plaintiff,<br><br>v.<br><br>RECEIVABLES PERFORMANCE MANAGEMENT, LLC,<br><br>    Defendant. | Civil Action No. 20-2189 (JXN)(JRA)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court upon the motion for summary judgment filed by Defendant Receivables Performance Management, LLC ("RPM" or "Defendant") pursuant to Federal Rule of Civil Procedure 56. (ECF No. 30.) Plaintiff John Frank ("Frank" or "Plaintiff") opposed the motion (ECF No. 34), and Defendant replied (ECF No. 35). The Court has subject-matter jurisdiction under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion for summary judgment will be **GRANTED in part**.

I.   **BACKGROUND**[1]

In early 2016, Plaintiff purchased a new cellular phone with a telephone number ending in 9459. (Declaration of John Frank ("Frank Decl.") ¶¶ 2, 3, ECF No. 34-2). Shortly after, Plaintiff began receiving calls on his new cell phone from RPM, who was attempting to collect a debt.

---

[1] The following facts are taken from Defendant's Statement of Undisputed Material Facts ("DSUMF"), Plaintiff's response thereto ("Pl.'s Resp. to DSUMF"), and the exhibits submitted in support of and in opposition to Defendant's motion for summary judgment. For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

(Frank Decl. ¶ 4; DSUMF ¶ 1, ECF No. 30-1.) Plaintiff asserts that when he answered a call from RPM, there would be a delay of 4-5 seconds before a prerecorded message would play, indicating that the call was an attempt to collect a debt and to remain on the line for the next available representative. (Frank Decl. ¶ 5). Plaintiff claims that after he picked up RPM's calls, he would "typically [] listen to the prerecorded message before hanging up." Plaintiff states that on two occasions in June 2016, he waited until after the prerecorded message played and then spoke with a representative who indicated that they were calling from RPM and that the call was an attempt to collect a debt. (Frank Decl. ¶¶ 13, 14.) Plaintiff claims he informed RPM's representative that he had no debt and asked the representative to stop calling him. (Frank Decl. ¶¶ 16, 18.) Plaintiff claims that despite telling the representatives to stop calling, the calls from RPM continued. (Frank Decl. ¶ 19.) Plaintiff alleges that between June 2016 and October-November 2016, he received approximately 250 calls from RPM, which he answered, and each included a prerecorded or artificial voice message. (Frank Decl. ¶ 22.) Plaintiff also claims that "on one or more occasion[s]," RPM left a prerecorded message on his voicemail but never saved the messages, and they were "automatically deleted by the cell phone carrier after a certain amount of time." (Frank Decl. ¶ 26.)

     **A.  RPM's Call Technology**

In 2016, RPM used non-party, LiveVox Human Call Initiator ("HCI") to make all outbound telephone calls to cell phones. (*See* DSUMF ¶ 2.) The LiveVox HCI system is purportedly designed to involve human intervention in calls directed to cell phone numbers. (*Id*. ¶ 10.) Therefore, every call launched using the HCI system requires human intervention by an agent, an employee, or another person working on behalf of the LiveVox customer making the call. (*Id*. ¶ 10.) The human intervention aspect of the HCI system involves the combination of "clicker agents" and "closer agents." (DSUMF ¶¶ 10-12.) The "clicker agent" clicks on a dialogue box to confirm the launching of a call to each telephone number. (*Id*. ¶ 10.) Each call must be launched by a click

2

made by a clicker agent, and a click can launch only one single call. (*Id*. ¶ 24.) The clicker agent can also monitor a real-time dashboard that contains information about "closer agent" availability, the number of calls in progress, and related metrics. (*Id*. ¶ 11.) The closer agent is the agent designated by the LiveVox customer to speak with the call recipient. (*Id*.) For a call to be launched in the HCI system, the clicker agent must take the action previously described, and a closer agent must also be available to take the call. (*Id*.) LiveVox's HCI system does not have the capacity to auto-dial; it does not have any features that permit autodialing, and there are no features in HCI that can be turned on to enable autodialing. (DSUMF ¶ 19.) Further, RPM contends that HCI does not have the capacity to use an artificial or pre-recorded voice and does not use any artificial or pre-recorded voice. (DSUMF ¶ 23.) RPM maintains that it is impossible to launch artificial or pre-recorded voice campaigns with HCI or deliver any pre-recorded or automated voice calls or messages. (*Id*.)

RPM maintains account notes referred to as "PICK notes" to document all communications about an account. (DSUMF ¶ 4.) PICK notes are kept as business records in the course of everyday business for every collection account that RPM maintains. (DSUMF ¶ 5.) LiveVox's records of the calls made by RPM reflect that all calls made to Plaintiff's cell phone ending in 9459 were made using HCI. (DSUMF ¶ 27; Declaration of Laurence Siegel ("Siegel Decl."), ¶ 20, ECF No. 30-1; *id*. Exhibit l at 35-40.)

On February 28, 2020, Plaintiff commenced this action alleging violations of the 1991 Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (*See* ECF No. 1.) Specifically, Plaintiff claims that RPM "plac[ed] auto-dialed calls and/or prerecorded messages to the Plaintiff's cell phone" in violation of 47 USC §227(b)(1)(A)(iii) of the TCPA. (Compl. ¶ 20.) Plaintiff also claims RPM "willfully violated the TCPA numerous times by placing calls to the

3

Plaintiff's cell phone without his prior, express consent." (*Id.* ¶ 21.) Plaintiff seeks actual, statutory, and treble damages. (*Id.* at 4.)

RPM filed the instant motion for summary judgment. (ECF No. 30.) Plaintiff filed an opposition (ECF No. 34), and RPM replied in further support (ECF No. 35). This motion is now fully briefed and ripe for the Court to decide.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id*. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Rule 56(e)). "In considering a motion for summary judgment, a district court may

4

not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which ... [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

**III.   DISCUSSION**

In 1991, Congress passed the TCPA to address "the proliferation of intrusive, nuisance calls" to consumers and businesses from telemarketers. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399, 141 S. Ct. 1163, 1167, 209 L. Ed. 2d 272 (2021). The relevant text of the TCPA reads:

> It shall be unlawful for any person within the United States ...
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ...

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

47 U.S.C. § 227(b)(1). "To facilitate enforcement, the TCPA provides a private right of action with statutory damages of $500 per call made in violation of the statute, and treble damages for a knowing or willful violation." *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 643 (E.D. Pa. 2018) (citing 47 U.S.C. § 227(b)(3)).

### A. RPM's Motion for Summary Judgment

RPM contends that Plaintiff has failed to present any factual dispute with respect to his TCPA claim. (*See generally* ECF No. 30.) RPM argues that it is not liable under the TCPA for the calls made to Plaintiff's cell phone as the LiveVox HCI system is not an ATDS[2] and cannot be used with an artificial voice or leave prerecorded messages. (ECF No. 30 at 10.) First, RPM claims the HCI system does not constitute an ATDS under the TCPA as it does not have a random or sequential number generator to produce telephone numbers or store numbers, it does not have the present capacity to autodial. (ECF No. 30 at 4, 9.) Second, RPM claims that the HCI system does not have the capacity to use an artificial or pre-recorded voice; thus, it is simply not possible to deliver any pre-recorded or automated messages on calls made using the HCI system. (*Id*. at 4,

---

[2] The TCPA defines the term "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). On April 1, 2021, the Supreme Court decided *Facebook, Inc. v. Duguid*, 592 U.S. 395, 141 S. Ct. 1163, 209 L.Ed.2d 272 (2021). In that case, the Court resolved a circuit split as to the meaning of the language "automatic telephone dialing system," clarifying that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." 141 S. Ct. at 1173. In doing so, it overruled the Ninth Circuit's interpretation of this language, wherein the Ninth Circuit held that any equipment capable of merely storing numbers and then calling them qualified as an automatic telephone dialing system. *Id.*; *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). "In other words, the capacity to store and dial phone numbers, without the use of a random or sequential number generator, is insufficient to qualify a device as an ATDS." *Bank v. Digit. Media Sols., Inc.*, No. 22-CV-293(EK)(LB), 2023 WL 1766210, at *1 (E.D.N.Y. Feb. 3, 2023*). *Saladino v. Portfolio Recovery Assocs., LLC*, 684 F. Supp. 3d 89, 96–97 (W.D.N.Y. 2023)

11.) In support of summary judgment, RPM submitted testimonial evidence from its General Counsel, Mark Thomas Case, Esq. (Exhibit B, ECF No. 30-1), who asserts that RPM used third-party software, LiveVox HCI ("HCI"), to make all outbound calls to cell phones in 2016, including the 200+ calls it made to Plaintiff's cell phone. (Exhibit B, Deposition of Mark Thomas Case ("Case Dep."), T21:12 to 23, T23:5 to 10, ECF No. 30-1); the Declaration of Laurence Siegel ("Siegel Decl."), who avers that as Executive Vice President of Product Development and co-founder of LiveVox, Inc., he has personal knowledge of and understands LiveVox's outbound dialing system HCI. (Siegel Decl. ¶¶ 1-2.) Siegel contends that HCI does not use any artificial or pre-recorded voice (*id.* ¶ 15), does not have a random or sequential number generator, and does not produce or store telephone numbers to be called using a random sequential number generator. (*Id.* ¶ 17.) Accordingly, HCI, as described by Siegel, does not qualify as an ATDS, nor does it have the capacity to use or deliver any artificial or prerecorded voice calls or messages such that any calls placed to Plaintiff using HCI would not subject RPM to liability under the TCPA. Additionally, RPM produced copies of its PICK notes (Exhibit C, ECF No. 30-1) and LiveVox's records (collectively, the "Records") of the calls made by RPM to Plaintiff's cell phone ending in 9459 (Siegel Decl., Exhibit 1, ECF No. 30-1), which reflect that the calls were made using HCI. RPM argues that Plaintiff has not produced any tangible evidence that RPM used an ATDS or prerecorded voice in making the alleged calls. (ECF No. 30 at 11.)

In his opposition brief, Plaintiff abandons his claim that RPM used an ATDS. (ECF No. 34 at 1, 6.) However, Plaintiff maintains that RPM made calls to his cell phone using artificial or prerecorded voice. (ECF No. 34 at 5.) Plaintiff relies on his deposition testimony (Exhibit A, Deposition of John Frank ("Frank Dep."), ECF No. 34-1) and declaration (Declaration of John Frank ("Frank Decl."), ECF No. 34-2) filed in opposition to RPM's motion to support his claim. Plaintiff maintains that he received "a total of approximately 250 calls from [RPM] from between

7

June 2016 through October-November 2016, which he answered and each included a prerecorded or artificial voice messages from [RPM]." (Frank Decl., ¶22). Plaintiff claims that "[t]ypically, when [he] would receive a call from [RPM, he] would answer the call, there would be a delay of 4-5 seconds, and then a prerecorded message would play on the phone indicating that the call was an attempt to collect a debt and to remain on the line for the next available representative." (Frank Decl. ¶ 7.) Plaintiff claims that "typically [he] would listen to the prerecorded message before hanging up." Further, Plaintiff claims that on two occasions in June 2016, he waited until after the prerecorded message played and then spoke with a representative who indicated that the call was from RPM and that this was an attempt to collect a debt. (Frank Decl. ¶¶ 13, 14.) Plaintiff states that he informed the RPM representative that he did not have a debt and asked the representative to stop calling him. (Frank Decl. ¶¶ 16, 18.) Plaintiff avers that despite telling the representatives to stop calling, the calls from RPM continued. (Frank Decl. ¶ 19.) Plaintiff also claims that "[o]n one or more occasions, [RPM]'s prerecorded message was left on [his] voicemail, but [he] never saved the messages, which were automatically deleted by the cell phone carrier after a certain amount of time." (Frank Decl. ¶ 26.) Plaintiff contends that there is a genuine issue of material fact as to whether the 250 calls Plaintiff received from RPM were made using a prerecorded message or artificial voice in violation of the TCPA, and therefore, RPM's motion must be denied. (ECF No. 34 7, 8.)

To establish a TCPA violation, Plaintiff must show that RPM (1) made a non-emergency call to a cellular telephone (2) using an artificial or prerecorded voice or ATDS (3) without Plaintiff's consent. (*Richardson v. Verde Energy USA, Inc.*, 354 F.Supp.3d 639, 643 (E.D. Pa 2018) (citing 47 U.S.C. § 227(b)(1)(A)(iii)).

As a preliminary matter, the Court notes that Plaintiff has abandoned his TCPA claim based on whether the dialing system used to make the calls was an ATDS. (*See* ECF No. 34 at 6.) As a

8

result, RPM's motion for summary judgment will be granted on Plaintiff's claims to the extent that they are based on RPM's alleged use of an ATDS. Next, neither party disputes that RPM made at least 212 phone calls to Plaintiff's cell phone number ending in 9459 and that Plaintiff did not consent to RPM calling him. (CITE.) Thus, the only disputed issue is whether RPM calls to Plaintiff were made using an artificial or prerecorded voice.

          1. <u>Whether RPM Used an Artificial or Prerecorded Voice When Calling Plaintiff</u>

The use of artificial voice and prerecorded messages is a separate and independent basis on which a defendant may be liable for violating the TCPA. 47 U.S.C. § 227(b)(1)(A). To be liable under the "artificial or prerecorded voice" section of the TCPA, a defendant must make a call, and an artificial or prerecorded voice must actually play." *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015). Thus, unless the recipient answers, an artificial or prerecorded voice is never used. *Id.* at 641.

A review of RPM's Records of the calls to Plaintiff, the accuracy of which Plaintiff does not dispute, shows that most of the 200+ calls RPM made to Plaintiff in 2016 using the HCI system detected an answering machine and hung up. (*See* Siegel Decl., Exhibit 1; Exhibit C.) The call outcome for these calls is described as "Answering Machine (Hung Up)" or "ans machine." (*Id*.) The Records show twenty-four instances in which there was no answer and described as such. (*Id*.) In one instance, the Records indicate that the call was transferred to an agent who did not leave a message; the call result was "AGENT – No Message Left on AM." (*Id*.) However, RPM does not provide any explanation for the results of the following five calls listed in the Records: RPM's calls to Plaintiff on July 16, 2016, and October 12, 2016, indicate "Invalid Number[,]" "disconnected[,]" or "wrong number" (Seigel Decl., Exhibit 1 at *37, *40; Exhibit C at *20, *25); the June 30, 2016 call indicates "Hung Up in Opening" or "hung up" (Seigel Decl., Exhibit 1 at *

9

36; Exhibit C at 20); and the August 12 and 24, 2016 calls indicate as "AGENT – CUST 2". (Seigel Decl., Exhibit 1 at *38).

RPM claims that the HCI system RPM used to make the calls to Plaintiff cannot use an artificial or pre-recorded voice. Plaintiff has introduced testimony, however, that when he received a call from RPM, he would answer the call, "there would be a delay of 4-5 seconds, and then a prerecorded message would play on the phone indicating that the call was an attempt to collect a debt and to remain on the line for the next available representative." (Frank Decl. ¶ 7.) Plaintiff claims that "typically [he] would listen to the prerecorded message before hanging up." Thus, based on RPM's lack of explanation for the results listed for the five calls placed on June 30, 2016, July 16, 2016, August 12 and 24, 2016, and October 12, 2016, and the testimonial evidence offered by Plaintiff, the Court finds that a genuine issue of material fact exists as to whether RPM used an artificial or prerecorded voice during these five instances. See *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"). Consequently, RPM's motion for summary judgment will be denied on Plaintiff's claims based on RPM's alleged use of an artificial or prerecorded voice for the five calls placed to Plaintiff's cell phone on June 30, 2016, July 16, 2016, August 12 and 24, 2016, and October 12, 2016.

Finally, Plaintiff claims that "[o]n one or more occasions," RPM left a prerecorded message voicemail, "which were automatically deleted by the cell phone carrier after a certain amount of time." (Frank Decl., ¶26). However, there is no indication in RPM's Records that RPM ever left a voicemail on Plaintiff's cell phone. (*See* Siegel Decl., Exhibit 1; Exhibit C). Plaintiff has not offered any evidence showing that other telephone calls exist outside the record currently before

this Court. Further, Plaintiff does not say whether that occurred before or after he filed this case and offers no explanation for why he did not preserve these alleged voicemail recordings. He did not write down the message. Simply put, Plaintiff has not offered any evidence aside from vague and unsupported allegations to undermine RPM's Records, which show that RPM left no voicemails. *See Fennell v. Navient Sols., LLC*, No. 6:17-cv-2083, 2018 WL 7411856, at *6, 2018 U.S. Dist. LEXIS 223047, at *16 (M.D. Fla. 2018). As a result, RPM's motion for summary judgment will be granted on Plaintiff's claims that RPM left prerecorded messages on his voicemail.

### IV.   CONCLUSION

For the foregoing reasons, RPM's motion for summary judgment (ECF No. 30) is **GRANTED in part** as to Plaintiff's claims that RPM allegedly used an ADTS and left prerecorded messages on his voicemail, and these claims are **DISMISSED with prejudice**. RPM's motion for summary judgment is **DENIED** as to Plaintiff's claims concerning the use of artificial voice or prerecorded messages on the five calls placed by RPM to Plaintiff on June 30, 2016, July 16, 2016, August 12 and 24, 2016, and October 12, 2016. An appropriate Order accompanies this Opinion.

**DATED:** June 28, 2024

JULIEN XAVIER NEALS
United States District Judge